## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

HO-CHUNK, INC.
1 Mission Drive
Winnebago, NE  68071;

WOODLANDS DISTRIBUTION COMPANY
701 Buffalo Trail
Winnebago, NE  68071; and

HCI DISTRIBUTION COMPANY
701 Buffalo Trail
Winnebago, NE  68071,3602,

|                                  |
|----------------------------------|

*Plaintiffs,*                                    **Case No. 13-cv-_____**

v.

ERIC H. HOLDER, in his official capacity,
Attorney General of the United States
U.S. Department of Justice                       **COMPLAINT**
950 Pennsylvania Avenue, NW
Washington, DC 20530;

UNITED STATES DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, DC 20530;

B. TODD JONES, in his official capacity,
Acting Director
U.S. Bureau of Alcohol, Tobacco, Firearms and
Explosives
99 New York Avenue, NE
Washington, DC 20226; and

UNITED STATES BUREAU OF ALCOHOL,
TOBACCO, FIREARMS AND EXPLOSIVES
99 New York Avenue, NE
Washington, DC 20226,

*Defendants.*

COMES NOW Plaintiffs, Ho-Chunk, Inc., Woodlands Distribution Company and HCI

Distribution Company (collectively, the "Plaintiffs"), by and through undersigned counsel, and

complains of the Defendants as follows:

## PARTIES

1.      Plaintiff Ho-Chunk, Inc. ("HCI") is a business corporation formed and existing under the laws of the Winnebago Tribe of Nebraska and is an economic development arm and political subdivision of the Winnebago Tribe of Nebraska (the "Tribe") with offices at 1 Mission Drive, Winnebago, NE, 68071.

2.      Plaintiff Woodlands Distribution Company ("Woodlands") is a wholly-owned subsidiary of HCI that is a business corporation formed and existing under the laws of the Winnebago Tribe of Nebraska and is an economic development arm and political subdivision of the Winnebago Tribe of Nebraska with offices at 701 Buffalo Trail, Winnebago, NE, 68071. Woodlands is wholesale distributor of quality Native American tobacco products that are purchased from reservation-based manufacturers and distributed to reservation-based retailers in Indian Country throughout the United States.

3.      Plaintiff HCI Distribution Company ("HCID") is a wholly owned subsidiary of HCI that is a business corporation formed and existing under the laws of the Winnebago Tribe of Nebraska and is an economic development arm and political subdivision of the Winnebago Tribe of Nebraska with offices at 701 Buffalo Trail, Winnebago, NE  68071.  HCID also distributes Native American tobacco products purchased from reservation-based manufacturers to reservation-based retailers in Indian Country throughout the United States, and is one of the largest Tribal cigarette and tobacco distributors in the country.

4.      Defendant Eric H. Holder is the Attorney General of the United States (the "Attorney General"), with offices at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530, and is sued in his official capacity.

5.      Defendant United States Department of Justice is an executive agency of the United States ("DOJ"), with offices at 950 Pennsylvania Avenue, NW, Washington, DC 20530.

6.      Defendant B. Todd Jones is the Acting Directory of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, a bureau within the U.S. Department of Justice, with offices at 99 New York Avenue, NE, Washington, DC 20226, and is sued in his official capacity.

7.      Defendant United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is a bureau within the U.S. Department of Justice, with offices at 99 New York Avenue, NE, Washington, DC 20226.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1337 (act regulating commerce) and 1361 (mandamus against federal official), as hereinafter more fully appears.

9.      This Court has jurisdiction to grant the declaratory and injunctive relief requested in this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the Mandamus and Venue Act, 28 U.S.C. § 1361; and the Administrative Procedure Act, 5 U.S.C. §§ 701-706;

10.      Venue in this action lies in this Court pursuant to 28 U.S.C. § 1391(e)(1)(A) and (B), in that:  (i) this an action where the Defendants are agencies of the United States and officers and employees of such agencies acting in their official capacities; (ii) one or more of the Defendants resides within the District of Columbia; and (iii) a substantial part of the events or omissions giving rise to the claims in this action occurred within the District of Columbia.

## STATEMENT OF FACTS

11.     The Winnebago Tribe of Nebraska (the "Tribe") is a federally-recognized Tribe. *See* 78 Fed. Reg. 26,384 (May 6, 2013). Plaintiffs are economic and political subdivisions of the Tribe.

12.     The Winnebago Tribe created HCI under Tribal law to foster economic development on the Winnebago Reservation and create economic opportunities for Tribal members. Before HCI's creation, the Winnebago Reservation was an economically depressed region experiencing chronic and severe unemployment that reached as high as 65%. The Tribe's goal in creating HCI was to foster economic development on the Winnebago Reservation and create economic opportunities for Tribal members. HCI has succeeded in attaining those goals. Subsidiary corporations and businesses owned and managed by HCI, such as Plaintiffs Woodlands and HCID, have helped create hundreds of jobs on the reservation and for Tribal members.

13.     All of the profits earned by HCI are owned by the Tribe.  The Tribe pays 20 percent of those profits directly to the Tribe's general fund, which supports Tribal social welfare programs such as elder and child care, basic government services, and special programs such as down-payment assistance for Tribal members seeking to buy a home. The Tribe reinvests the remaining 80 percent of HCI's profits into the company to ensure that HCI remains at the forefront of the industries in which it operates.

14.     HCI does not sell, transfer or ship for profit cigarettes or smokeless tobacco in interstate commerce and does not engage in commerce in tobacco products in any form.

15.     Woodlands is a tobacco distributor that does not and has never sold, transferred or shipped for profit cigarettes or smokeless tobacco into Wisconsin.

16.     HCID is a tobacco distributor that purchases tobacco products manufactured exclusively within Indian Country and receives the same at its warehouse facility on the Tribe's reservation. HCID re-sells and ships those products exclusively to reservation-based purchasers in Indian Country throughout the United States.

17.     All tobacco products shipped by HCID to its customers have tribal tax stamps affixed in accordance with applicable law.

## THE PACT ACT

18.     On March 31, 2010, President Obama signed into law the Prevent All Cigarette Trafficking ("PACT") Act, Pub. L. 111-154, 24 Stat. 1088.  The PACT Act became fully effective on June 29, 2010, 90 days after the date of its enactment.  Pub. L. 111-154, § 6(a), 15 U.S.C.  § 375 Note.

19.     ATF is the federal agency within DOJ charged with the authority and responsibility of administering the PACT Act.  *See* 28 C.F.R. §§ 0.130-0.133.

### Delivery Sales/ Delivery Sellers

20.      The overriding purpose of the PACT Act was to deal with "remote" or "delivery sales" of cigarettes and smokeless tobacco. To accomplish its goals, the PACT Act substantially amended the Jenkins Act of October 19, 1949, c. 699, 63 Stat. 884, 15 U.S.C. § 375 *et seq*., to require all "delivery sellers" of cigarettes and tobacco products to, *inter alia*, comply with state tax and tobacco regulatory laws including state laws imposing tobacco excise taxes and licensing and tax-stamping requirements "[w]ith respect to delivery sales into a specific State and place...as if the delivery sales occurred entirely within the specific State and place." 15 U.S.C. § 376a(a)(3).

21.     The PACT Act defines a "delivery seller" as a person making a "delivery sale," 15 U.S.C. § 375(6), while a "delivery sale" is defined as any sale to a "consumer" that is submitted by means of a telephone or other method of voice transmission, the mails, the Internet or other online service, or sales where the seller is otherwise not in the physical presence of buyer when the order is made. 15 U.S.C. § 375(5).   The PACT Act's definition of "consumer" expressly *excludes* any person "lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco." 15 U.S.C. § 375(4)(B).

### The Non-Compliant List

22.     The PACT Act mandates that the Attorney General create a list of unregistered or noncompliant delivery sellers (the "Non-Compliant List").   15 U.S.C. §376a(e)(1). The Attorney General must distribute the Non-Compliant List to a broad swathe of public officials and private persons, including every state's attorney general and tax administrator; common carriers and other persons that deliver small packages to consumers in interstate commerce; the U.S. Postal Service; and any other person the Attorney General deems can "promote the effective enforcement" of the Act. 15 U.S.C. § 376a(e)(1)(A)(i).

23.     The PACT Act requires the Attorney General to "publicize" the Non-Compliant List and to make it available to any other person engaged in the business of interstate deliveries or who delivers cigarettes or smokeless tobacco in or into any State. 15 U.S.C. § 376a(e)(1)(A)(ii).

24.     In preparing or updating the Non-Compliant List, the Attorney General is required to "use reasonable procedures to ensure maximum possible accuracy and completeness of the records and information relied on for the purpose of determining that a delivery seller is not in compliance . . . ." 15 U.S.C. § 376a(e)(1)(E)(i).

25.     The Attorney General is required to make a "reasonable attempt to send notice to the delivery seller…that the delivery seller is being placed on the [L]ist" not later than 14 days before including a delivery seller on the Non-Compliant List. 15 U.S.C. § 376a(e)(1)(E)(ii). Such notice must also cite "the specific reasons for which the delivery seller is being placed on the list." *Id.*

26.     The PACT Act requires that the Attorney General to provide an opportunity to the delivery seller to challenge its placement on the List, 15 U.S.C. § 376a(e)(1)(E)(iii), and to investigate each such challenge by "contacting the relevant Federal, State, tribal and local law enforcement officials" and by providing "the specific findings and results of the investigation to the delivery seller not later than 30 days *after* the date on which the challenge was made." 15 U.S.C. § 376a(e)(1)(E)(iv) (emphasis added).

27.     If the Attorney General determines that the basis for including the delivery seller on the Non-Compliant List is inaccurate, based on incomplete information, or cannot be verified, then the PACT Act requires the Attorney General must promptly remove the delivery seller from the Non-Compliant List and notify the appropriate government authorities thereof. 15 U.S.C. § 376a(e)(1)(E)(v).

28.     A state, local, or tribal government shall provide the Attorney General with all known names, addresses, website addresses, or other primary contact information of any delivery seller that, among other things, offers for sale or makes sales of cigarettes or smokeless tobacco "in or into the State, locality, or tribal land" and that fails "to register with or make reports to the *respective* tax administrator as required" by the Act or that "has been found in a legal proceeding to have otherwise failed to comply" with the Act. § 376a(e)(6)(A)(i) (emphasis supplied).

29.     The Attorney General must include in the Non-Compliant List the names of any noncomplying delivery seller "identified by any State, local, or tribal government" and must distribute the Non-Compliant List to "the attorney general or chief law enforcement official and the tax administrator of any government" that submits such information. 15 U.S.C. § 376a(e)(1)(D). The Attorney General must include any addition to the Non-Compliant List no later than 30 days from the receipt of such information from a state, local, or tribal government. § 376a(e)(7)(A).

30.     Upon receiving written notice that a state, local, or tribal government no longer desires to submit such information, the Attorney General must remove from the Non-Compliant List "any persons that are on the [L]ist solely because of the prior submissions of the government of the list of the government of noncomplying delivery sellers of cigarettes or smokeless tobacco or a subsequent update or correction by the government." 15 U.S.C. § 376a(e)(6)(C).

31.     Notwithstanding the requirement that the Attorney General "publicize" the Non-Compliant List, 15 U.S.C. § 376a(e)(1)(A)(ii), the PACT Act requires that the contents of the List be kept confidential and that any person receiving the List maintain its confidentiality.  15 U.S.C. § 376a(e)(1)(F). The Attorney General may deliver the List, for enforcement purposes, to any government official, any common carrier, or "or to any other person that delivers tobacco products or small packages to consumers." *Id*.  The PACT Act does not prohibit a common carrier, the U.S. Postal Service, or any other person receiving the List from discussing the inclusion of a delivery seller on the List with that delivery seller. *Id*.

32.     The PACT Act prohibits any person who receives the Non-Compliant List from knowingly delivering any package for any person whose name appears on the List unless the deliverer knows or believes in good faith that the package contains no cigarettes or smokeless

tobacco; the delivery is to one lawfully engaged in the business of manufacturing, distributing, or selling cigarettes or smokeless tobacco; or the package weighs more than 100 pounds and the deliverer does not know or have reasonable cause to believe it contains cigarettes or smokeless tobacco. 15 U.S.C. § 376a(e)(2)(A).

33.    Any common carrier or other person making a delivery subject to the PACT Act must not be required or otherwise obligated to determine whether the Non-Compliant List "is complete, accurate, or up-to-date," 15 U.S.C. § 376a(e)(9)(A)(i), and may not be subject to liability under any provision of law for, among other things, refusing to make any delivery at all on behalf of a person on the Non-Compliant List. 15 U.S.C. § 376a(e)(9)(C).  Common carriers or other persons that deliver cigarettes must implement updates to the Non-Compliant List "[c]ommencing on the date that is 30 days after the date of the distribution or availability of any updates . . . ."  15 U.S.C. § 376a(e)(2)(B).

34.    For purposes of the PACT Act, a delivery sale is presumed to have occurred in the state where the buyer obtains personal possession of the cigarettes or smokeless tobacco, and a delivery pursuant to a delivery sale is deemed to have been initiated or ordered by the delivery seller. 15 U.S.C. § 376a(f).

**Tribal Protections**

35.    The PACT Act expressly leaves unchanged existing Federal law controlling the sovereign and regulatory relations between Tribal, State and local governments.

36.    Section 5(a) of the PACT Act states that "Nothing in this Act . . . shall be construed to amend, modify, or otherwise affect . . . any limitation under Federal or State law, including Federal common law and treaties, regarding State jurisdiction, or lack thereof, over any tribe, tribal members, tribal enterprise, tribal reservation, or other lands held by the United States

in trust for one or more Indian tribes . . . any State or local government authority to bring enforcement actions against persons located in Indian Country." Pub. L. 111-154, § 5(e). *See also* 15 U.S.C. § 375 Note.

37.     Section 5(e) of the PACT Act provides that "[a]ny ambiguity between the language of this section [*i.e.,* Section 5] or its application shall be resolved in favor of this section [*i.e.,* Section 5]." Pub. L. 111-154, § 5(e). *See also* 15 U.S.C. § 375 Note.

## GOVERNMENT-TO-GOVERNMENT "CONSULTATION"

38.     Less than six weeks before the PACT Act took effect on June 29, 2010, Defendants set in motion a process that would lead to ATF's placing of HCI, Woodlands, and HCID on the Non-Compliant List.

39.     On May 19, 2010, ATF sent a form letter to elected tribal officials around the country soliciting input as ATF prepared to develop regulations to implement the PACT Act (the "May 19, 2010 Letter"). A copy of the May 19, 2010 Letter is attached hereto as Exhibit A.

40.     In the May 19, 2010 Letter, ATF stated that it would schedule an "in-person consultation event" for tribal officials to give "maximum consideration" to tribal input on June 8, 2010, only three weeks before the PACT Act was to take effect. *Id.*

41.     ATF further stated that it would publish "an interim rule" to "immediately implement the statutory mandates of the PACT Act."  *Id*. ATF requested written comments by June 18, 2010, less than two weeks before the PACT Act's effective date, and stated there would be "subsequent opportunity for comments." *Id*.

42.     Tribal governmental officials aware of the meeting submitted detailed comments that uniformly expressed the opinion that the PACT Act did not apply to "brick and mortar" tobacco businesses that did not engage in "remote" or "delivery sales" and that the Act's

definition of "interstate commerce" did not include sales exclusively between tribal entities located on Indian reservations. A copy of some of the comments submitted is attached hereto as Exhibit B.

43.     With no further consultations, meetings or discussions with tribal officials, ATF issued a response summarizing the comments received from Tribal Governments on November 18, 2010, nearly five months after the PACT Act became effective ("ATF's Response"). A copy of ATF's Response is attached hereto as Exhibit C.

44.     ATF's Response summarily rejected each and every one of the comments received from elected tribal officials, providing no real explanation for its conclusions.  ATF thereafter published the Response on its website and included the positions contained therein in a page titled "PACT Act Frequently Asked Questions" (the "FAQs"). *See* http://www.atf.gov (last visited Jul. 1, 2013).

45.     On November 15, 2011, DOJ again invited tribal officials to another "formal" meeting in Washington, D.C. on December 14, 2011. A copy of the November 15, 2011 letter is attached hereto as Exhibit D.  This letter characterized the earlier "in-person consultation event" as an "initial discussion[]" about implementing the PACT Act. *Id.* at 1.

46.     The November 15, 2011 Letter stated that the FAQs were ATF's current guidance on the PACT Act and superseded any other statements or interpretations. *Id.* It further stated that DOJ was considering issuing a formal interpretive rule on the PACT Act to be published in the Federal Register, and that DOJ sought tribal input on such a rule and on potential changes to the FAQs. *Id.* at 2. The Letter included a list of questions regarding on which DOJ was interested in receiving tribal input and which reflected feedback already received by tribal governments. *Id.*

47.     The December 14, 2011 meeting with DOJ was attended by approximately fifty tribal governmental officials.  Their written and oral remarks challenged the legal sufficiency of ATF's Response and the FAQs. They expressed the view that ATF must withdraw the Response, remove it from ATF's website, and correct the information contained in the FAQs.

48.     Shortly after the December 14, 2011 meeting, the ATF Response was removed from the ATF website. The FAQs remained on the ATF website unchanged, as did reference to ATF's Response. Subsequent efforts by HCID and numerous other Tribal entities to resolve this issue through consultation with ATF led to "promises" that the FAQs would be revised but in the end nothing was done.  A copy of the FAQs is attached hereto as Exhibit E.

### DOJ's Interpretative Guidance

49.     The FAQs address registration and reporting requirements under the PACT Act under the heading "REGISTERING" as follows:

Q—Who has to register?

A—Any person who sells, transfers or ships for profit cigarettes or smokeless tobacco in interstate commerce, whereby such cigarettes or smokeless tobacco are shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco or who advertises or offers cigarettes for such sale, transfer or shipment.

Ex. E, p. 3.

50.     The FAQs incorporate the position ATF took in its ATF's Response, stating:

Q-- Does selling and transporting tobacco from one Native American reservation or territory to another Native American reservation or territory qualify as interstate commerce?

A—Yes, even if the sale and transportation occurred within the same State.

*Id.* at p. 2.

## THE *GORDON V. HOLDER* DECISION

51.     On June 28, 2013, the Court of Appeals for the District of Columbia Circuit upheld a preliminary injunction enjoining Defendants from enforcing Section 2a of the PACT Act (15 U.S.C. §376a (a)(3)-(4), (d)), which prohibits delivery sales unless all applicable state and local taxes are paid in advance. *Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013). Upon information and belief, that injunction is still in effect.

52.     The *Gordon* court agreed with the district court's determination that the PACT Act's blanket incorporation of state laws that impose a duty to collect taxes raised substantial and novel constitutional questions.

53.     The injunction issued by the district court and upheld by the D.C. Circuit in *Gordon* is identical in effect to one previously issued against the Defendants by the District Court for the Western District of New York that was upheld by the Second Circuit. *See Red Earth LLC v. United States*, 657 F.3d 138 (2d Cir. 2011) (affirming entry of preliminary injunction against enforcement of 15 U.S.C. §376a (a)(3)-(4), (d) on due process grounds).

## ATF's NON-COMPLIANCE DETERMINATION

### The Wisconsin & Idaho Notices

54.     By letters dated July 25, 2013, ATF provided separate but identical notices to each of the Plaintiffs that ATF had "received information" that each was failing to comply with the PACT Act with respect to delivery shipments into Wisconsin (together, the "Wisconsin Notice"). Copies of each of the Wisconsin Notice letters are attached hereto as Exhibit F.

55.     By letters dated August 14, 2013, ATF provided separate notices to Woodlands and HCID stating that ATF had "received information" that each was failing to comply with the

PACT Act with respect to delivery shipments into Idaho (together, the "Idaho Notice"). Copies of the Idaho Notice letters are attached hereto as Exhibit G.

56.     The Wisconsin and Idaho Notices informed Plaintiffs that the PACT Act requires "anyone engaged in such business activity to register with the State tobacco tax administrator of the States in which they do business." Neither the Wisconsin Notice nor the Idaho Notice explained or described what the phrase "such business activity" referred to.

57.     The Wisconsin and Idaho Notices accused Defendants of violating the PACT Act. Specifically, the Notices stated that ATF possessed "information [that] indicates that you are currently making delivery shipments" into each state and accused the Plaintiffs of failing to comply with 15 U.S.C. § 376(a)(1)-(2) by not registering with or appointing an agent for service of process in either state, and for not filing reports as required. The Notices also accused Plaintiffs of violating 15 U.S.C. § 376a(3)(A)-(B) by not paying the proper excise taxes or stamping cigarettes, and by being unlicensed to sell cigarettes within either state.

58.     The Wisconsin and Idaho Notices accused Defendants of violating the CCTA. Specifically, the Wisconsin Notice accused the Plaintiffs of violating 18 U.S.C. § 2342 based on "information" obtained by Defendants that the Plaintiffs had shipped "more than 10,000 unstamped cigarettes into Wisconsin" (Ex. F), and the Idaho Notice accused Plaintiffs of the same violation based only on "information" that Plaintiffs had shipped "unstamped cigarettes into Idaho" without specifying any amount. Ex. G.

59.     The Wisconsin and Idaho Notices concluded by informing Plaintiffs that ATF was considering "placing your name and the name of your business on the Non-Compliant List," and that doing so might affect Plaintiffs' ability "to deliver cigarettes and smokeless tobacco," since

the PACT Act prohibited common carriers from delivering such items for persons so listed. Exs. E, F.

60.     The Wisconsin and Idaho Notices closed by informing Plaintiffs that, if Plaintiffs "feel ATF has erroneously sent you this letter," that Plaintiffs had the right to submit a formal written challenge to ATF within 14 days of the Notice date. Both Notices stated that Plaintiffs were required to "provide the specific reason(s)" why they should not be included on the Non-Compliant List, after which ATF would have 30 days "to investigate and respond."

61.     Neither the Wisconsin nor the Idaho Notice contained a citation or other reference to the source of Plaintiffs' substantive rights of challenge.

**Plaintiffs' Response**

62.     Plaintiffs responded to the Wisconsin Notice on August 6, 2013, and to the Idaho Notice on August 26, 2013 (together, "Plaintiffs' Response"). Copies of the HCI Response letters are attached hereto as Exhibit H.

63.     Plaintiffs' Response challenged the legal and factual underpinnings of ATF's threats as to each Plaintiff. It informed ATF that HCI is "a tribally chartered corporation and is wholly owned by the Winnebago Tribe of Nebraska"; that HCI is "a political and economic subdivision" of the Tribe; that HCI is a holding company; and that HCI had no role in the issue related to the Wisconsin Notice. *Id.*

64.     Plaintiffs' Response informed ATF that Woodlands and HCID are wholly owned subsidiaries of HCI; that Woodlands and HCID are separately chartered and distinct Tribal entities; and that, like HCI, Woodlands had no role in the issue related to the Wisconsin Notice. *See Id.*

65.     Plaintiffs' Response further asserted that, as to the relevant allegations in the Idaho Notice, Woodlands had been licensed by Idaho until the license had lapsed for lack of sales; that Woodlands had made no sales into Idaho; that Woodlands had submitted monthly reports to Idaho in compliance with Idaho law; and that Woodlands had in fact filed to renew its state cigarette-distributor license only the day before the Idaho Notice. Plaintiffs' Response concluded that because Woodlands had never shipped cigarettes into Idaho, it should not be considered a part of ATF's enforcement issue there. *Id.*

66.     As to HCID, Plaintiffs' Response further stated that despite not being legally obligated to do so, HCID had voluntarily ceased sales to Indian country in Wisconsin and would thereafter register with the appropriate State authorities and report all sales to the States. *Id.*

67.     Plaintiffs' Response detailed the serious legal, policy and political concerns that the Wisconsin and Idaho Notices raised. It explained why ATF's position in the Notices appeared to violate the plain terms of the PACT Act, and why Plaintiffs believed ATF's threats were overreaching and without support in law. *Id.*

68.     ATF's unwarranted actions threatened to destroy a substantial part of HCID's business and irreparably damage its good reputation. As a result, HCID was compelled to register with and report to the relevant state authorities to protect its interests.  *Id*.  HCI attempted to telephone ATF officials after receipt of the Wisconsin Notice to inform ATF that HCID would voluntarily report its sales in Indian country in Wisconsin to state authorities to avoid further injury. ATF did not return HCI's call. *See* Affidavit of Lance G. Morgan, CEO, Ho-Chunk, Inc., a copy of which is attached hereto as Exhibit I.

**ATF's Final Determination**

69.     Without further communication from ATF, on or about August 26, 2013, ATF deemed the Plaintiffs to have violated the PACT Act, the CCTA and Wisconsin state laws based on its activities in Wisconsin, and ATF added Plaintiffs names to the Non-Compliant List (the "Final Determination"). A copy of ATF's Final Determination is attached hereto as Exhibit J.

70.     To date, Plaintiffs have received no further correspondence from ATF with respect to the Idaho Notice.

71.     The Final Determination concluded that Plaintiffs violated 15 U.S.C. §§ 376a(a)(1)-(2), 376a(3)(A)-(B) by failing to register with Wisconsin state authorities and by not appointing an agent for service of process in or filing reports with the State, and by not paying the proper excise taxes or being licensed to sell cigarettes in Wisconsin. *Id.*

72.     The Final Determination concluded that Plaintiffs had violated 18 U.S.C. § 2342 by "repeatedly shipping more than 10,000 unstamped cigarettes into Wisconsin" to persons who "illegally distributed them." *Id*.

73.     The Final Determination also concluded that Plaintiffs had violated Wisconsin Statutes §§ 139.34, 139.79 (2011-2012) by not filing an application for and obtaining the proper state permits. *Id*.

74.     The conclusions reached by the Final Determination were based on allegations by Wisconsin state officials that Plaintiffs had "violated the PACT Act and the CCTA." *Id.* at p. 2. Upon information and belief, such allegations were unsupported by valid evidence.

75.     The Final Determination acknowledged the statement in Plaintiffs' Response that Plaintiffs had "ceased all shipments of untaxed tobacco into Wisconsin" and would "register with the State of Wisconsin and report all future shipments of tobacco to Wisconsin as required by the

PACT Act." *Id*. Defendants further acknowledged that doing so "would prevent ATF from placing your companies on the PACT Act Non-Compliant List." *Id*. Nevertheless and without explanation, Defendants accepted as true claims by the Wisconsin Department of Revenue that Plaintiffs had not submitted any information or inquiries regarding registration, in complete disregard of the facts. *Id*.

76.     The Final Determination provided no response whatsoever to the arguments in Plaintiffs' Response as to the limited applicability of the PACT Act with respect to intertribal trade that is lawful under tribal law within Indian Country.

77.     Upon information and belief, ATF's Final Determination was not based on record evidence. Whatever evidence ATF did rely upon has never been shared by ATF or Wisconsin state authorities with the Plaintiffs.

**Reply to Final Determination**

78.     Plaintiffs replied to ATF's Final Determination on August 29, 2013 ("Reply"). The Reply is attached hereto as Exhibit K.

79.     The Reply informed ATF that HCID was in the midst of researching and compiling the registration and reporting documents for filing with the State of Wisconsin when it received the Final Determination. *Id.*

80.     The Reply further explained that HCID did not contact the State regarding registration or reporting as all the necessary information is publically available online.  It also stated that the Plaintiffs intended to report for the entire month of August by September 10, 2013 as required pursuant to 15 U.S.C. §376 but that, due to the Final Determination, it was reporting through the date of the Reply.  HCID attached its reporting and registration documents and proof of service of the same on the State of Wisconsin to its Reply.  *Id.*

81.     The Reply reiterated that HCI and Woodlands do not engage in tobacco-product distribution in Wisconsin, whether to reservations located in the State or otherwise, and hence HCI and Woodlands had no obligation to register with the State.  *Id.*

82.     Despite having provided the information in writing, on September 5, 2013, ATF Associate Chief Counsel informed Plaintiffs' counsel that ATF was unaware of the corporate structure of HCI, Woodlands, or HCID. *See* Affidavit of B. Fenner, Esq., a copy of which is attached hereto as Exhibit L.

83.     ATF's Associate Chief Counsel further stated, contrary to ATF's assertions in the Final Determination, that registering and reporting future shipments with the State would not affect Plaintiffs' removal from the Non-Compliant List.  He now stated that to be removed from the List, Plaintiffs must ship to state-licensed distributors and fully comply with State regulatory law. *Id*.

84.     Upon information and belief, after adding Plaintiffs to the Non-Compliant List, Defendants contacted HCID's primary shipper, FedEx and informed them about Plaintiffs' placement on the List. ATF did so with the intention of unlawfully interrupting HCID's legitimate business activities.

85.     FedEx contacted Plaintiffs by letter dated August 26, 2013 to inform Plaintiffs that their names now appeared on the List and reminding Plaintiffs of their obligations under the PACT Act. A copy of the FedEx letter is attached hereto as Exhibit M.

86.     Since issuance of the Final Determination, carriers relied on by HCID and Woodlands for its business have threatened to refuse to accept shipments from HCID and Woodlands, and tribal manufacturers have begun refusing to supply tobacco products to HCID and Woodlands, directly and adversely affecting HCID's and Woodlands' business.

87.     Upon information and belief, the dramatic decline in HCID's and Woodlands' business is the direct and proximate result of ATF's placement of the Plaintiffs on the Non-Compliant List.

88.     Upon information and belief, common carriers and other persons that deliver cigarettes will refuse to deliver HCID's and Woodlands' cigarettes commencing on or about September 26, 2013, which is 30 days after distribution or availability of the update to the Non-Compliant List containing Plaintiffs' names.  On information and belief, placement on the Non-Compliant List has adversely affected HCI's ability to obtain federal contracts and has directly and proximately interfered with HCI's prospective business relationships.

## THE CCTA

89.     The CCTA defines "contraband cigarettes" as follows:

> A quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes . . . .

18 U.S.C. §2341(2).

90.     The CCTA prohibits "any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco."  18 U.S.C. §2342(a).

91.     The Plaintiffs, as instrumentalities of the Winnebago Tribe of Nebraska, are not "persons" under the CCTA.

92.     Plaintiff HCI has not and does not "ship, transport, receive, possess, sell, distribute, or purchase" cigarettes anywhere, including into Wisconsin and Idaho.

93.     Plaintiff Woodlands has not and does not "ship, transport, receive, possess, sell, distribute, or purchase" cigarettes into Wisconsin or Idaho.

94.     All cigarettes distributed by HCID into Wisconsin are distributed into Indian country in the state and have the appropriate tax stamps affixed as required by Tribal authorities.

95.     There are no "applicable State or local taxes" (other than Tribal taxes) upon cigarettes manufactured and sold in Indian Country between  tribes and tribally-licensed members and entities that have built substantial infrastructure in order to develop and maintain the tribal tobacco economy.  The only local taxes applicable thereto are those required by the tribal jurisdiction within which the transactions occur. Cigarettes that are tribally manufactured in Indian country and then sold to tribal entities in Indian country are not subject to state taxes based on well-established principles of federal and constitutional law that pre-empt state regulatory authority in Indian country.

## THE MASTER SETTLEMENT AGREEMENT

96.     In 1998 the Attorneys General from 46 states, including Wisconsin and Idaho, entered an agreement, known as the Master Settlement Agreement, with the four largest tobacco companies in the United States to settle suits by the States seeking to recover tobacco-related healthcare costs (the "MSA").

97.     Pursuant to the MSA, Wisconsin and Idaho each agreed to enact certain laws regulating the manufacture, distribution, and sale of cigarettes and other tobacco products within their jurisdictions. *See* Wis. Stats. § 995.10, *et seq.*; Idaho Stats. § 39-7801, *et seq.* (the "MSA Laws").

98.     Wisconsin's MSA Laws define "distributor" as either a person authorized to affix tax stamps to packages of cigarettes under Wisc. Stats. ch. 139, subch. II, or as any person that is

required to pay the tax imposed on tobacco products under subch. III of ch. 139. Wisc. Stats. 995.12(d).

99.     The Wisconsin state laws that ATF deemed Plaintiffs to have violated form part of Subchapters II and III of chapter 139 of the Wisconsin Statutes, which are incorporated by reference in Wisconsin's MSA Laws.

100.     Defendants' actions here complained of effectively seek to force tribes in Indian country to comply with the MSA and Wisconsin's implementation thereof.

101.     Upon information and belief, ATF's actions are part of a larger strategy by DOJ and to force all federally recognized Tribes to submit to regulatory strictures of the MSA.

102.     Upon information and belief, ATF considers inter-tribal commerce in tobacco goods within Indian country to be "MSA fraud," and ATF has improperly targeted legitimate tribal businesses for prosecution for violations of the PACT Act in disregard of the Federal Government's trust responsibilities toward Tribes. ATF's actions threaten to upend the constitutional balance of the federal system between tribes, states, and the federal government.

## FIRST CAUSE OF ACTION

### Violation of Administrative Procedure Act
### (PACT Act Procedural Requirements)

103.     Plaintiffs incorporate by reference and re-alleges the allegations contained in Paragraphs 1 through 102 of this Complaint.

104.     Defendants failed to use "reasonable procedures" in preparing and revising the Non-Compliant List to ensure "maximum possible accuracy and completeness" of the records and information relied on by Defendants in determining whether Plaintiffs were not in compliance with the Act, in violation of the Plaintiffs' rights thereunder. 15 U.S.C. § 376a(e)(1)(E)(i).

105.    Defendants in the Wisconsin Notice Letter failed to cite the specific reasons for which ATF intended to place the Plaintiffs on the Non-Compliant List, as required under law. 15 U.S.C. § 376a(e)(1)(E)(ii).

106.    Defendants failed to investigate the Plaintiffs' challenge to the Wisconsin Notice "by contacting the relevant Federal, State, tribal, and local law enforcement officials" within 30 days, as required under law. 15 U.S.C. § 376a(e)(1)(E)(iv). Indeed, ATF's Final Determination was dated precisely 20 days after the date of the Plaintiffs' Challenge Letters. Allowing for time for delivery of the mails, Defendants' "investigations" – if any – were hastily conducted in only 16 or so days. Upon information and belief, Defendants never contacted *any* relevant Tribal officials during the investigation period, as required by law, and relied instead exclusively on unsupported representations of Wisconsin officials.

107.    Defendants failed to provide the Plaintiffs with the specific findings and results of Defendants' "investigation" of the Plaintiffs' challenges within 30 days, as required.  The Final Determination contains *no* "specific findings and results" of Defendants' investigation. It relies exclusively on unknown "reports" by Wisconsin officials and expressly bases its conclusions thereon, contrary to law. The Final Determination contained no description whatsoever of what, if any, steps Defendants took to verify the information provided to ATF either by Wisconsin or by the Plaintiffs, in violation of law.

108.    At *no* time did Defendants provide the Plaintiffs with an opportunity to review any evidence offered in support ATF's Final Determination in advance of that decision, in violation of law. Defendants' failure to provide Plaintiffs with such information made it impossible for Plaintiffs to provide "specific reason(s)" to ATF why Plaintiffs should not be included on the Non-Compliant List, as required by ATF in the Wisconsin and Idaho Notices.

109.    Defendants failure to provide Plaintiffs with such information made it impossible for Plaintiffs to "provide the specific reason(s)" to ATF why Plaintiffs should not be included on the Non-Compliant List, as required by ATF in the Wisconsin and Idaho Notices.

110.    Defendants' actions in arriving at their conclusion that Plaintiffs were in violation of law were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

111.    Defendants' actions were in excess of statutory jurisdiction, authority or limitations, and short of statutory right.

## SECOND CAUSE OF ACTION

### Violation of Administrative Procedure Act
### (Wrongful Placement on Non-Compliant List)

112.    The Plaintiffs incorporate by reference and re-alleges the allegations contained in Paragraphs 1 through 111 of this Complaint.

113.    Defendants are interpreting and implementing the PACT Act in a  manner that is contrary to the provisions and in excess of statutory language of the Act.  Specifically, this has occurred with respect to the following PACT Act amendments of the Jenkins Act of October 19, 1949, c. 699, 63 Stat. 884, 15 U.S.C. § 375 et seq., relating to  requirements on remote or "delivery sales" of tobacco products.

114.    The FAQs published by ATF assert that the PACT Act's registration and reporting requirements apply "to any person," an interpretation that is contrary to the language of the Act and that is without any basis in law. Ex. E.

115.    Defendants' Wisconsin Notice states that the PACT Act's registration requirements apply to "*anyone* engaged in such business activity" as may be covered by the Act.

Ex. F (emphasis added).  Defendants' statements are arbitrary and capricious and without any basis in the plain language of the Act.

**Plaintiffs Not Engaged In "Interstate Commerce"**

116.    The PACT Act's reporting and registration requirements apply only to "any person who sells, transfers, or ships for profit cigarettes or smokeless tobacco *in interstate commerce.*" 15 U.S.C. § 376(a) (emphasis added).

117.    At all relevant times, Plaintiffs HCI and Woodlands did not sell, transfer or ship for profit cigarettes or smokeless tobacco into Wisconsin or Idaho.

118.    At all relevant times, Plaintiff HCID did not sell, transfer, or ship for profit cigarettes or smokeless tobacco "in interstate commerce" under the PACT Act.

119.    The PACT Act defines "Interstate Commerce" as

> commerce between a State and any place outside the State, commerce between a State and *any Indian country* in the State, or commerce between points in the same State but through any place outside the State or through any Indian country.

15 U.S.C. § 375(9) (emphasis added).

120.    The PACT Act defines "Indian Country" as having "the meaning given that term in 18 U.S.C. § 1151" and as including "any other land held by the United States in trust or restricted status for one or more Indian tribes." 15 U.S.C. § 375(7).

121.    Plaintiff HCI is not required to register or report under the PACT Act. It neither advertises, offers, nor engages in the sale, transfer, or shipment of cigarettes or smokeless tobacco.

122.    Plaintiff Woodlands is not required to register or report under the PACT Act. It neither advertises, offers, nor engages in the sale, transfer, or shipment of cigarettes or smokeless tobacco in interstate commerce for profit or otherwise under the PACT Act.

123.    Plaintiff HCID is not required to register or report under the PACT Act. It neither advertises, offers, nor engages in the sale, transfer, or shipment of cigarettes or smokeless tobacco in interstate commerce under the PACT Act.

124.    HCID engages in the sale, transfer and shipment of cigarettes and smokeless tobacco from the Winnebago Reservation to tribally licensed manufacturers, distributors, wholesalers or retailers of cigarettes or smokeless tobacco located on Indian reservations in Indian country in Wisconsin.

125.    HCID's business involves no transactions either (i) between states; (ii) between Indian country and a state; or (iii) between points in a state, whether "through" any Indian country or any place outside the state. HCID's business activities are exclusively inter-tribal and take place entirely between reservations in Indian country in different states and in the same state.

**Plaintiffs Not "Delivery Sellers"**

126.    Defendants unlawfully placed the Plaintiffs on the Non-Compliant List based on mere accusations that the Plaintiffs were "delivery sellers" engaged in "delivery sales." That determination was arbitrary and capricious and without any basis in law. Ex. F.

127.    Defendants subsequently placed the Plaintiffs on the Non-Compliant List based on unsubstantiated determination that the Plaintiffs were in fact "delivery sellers" engaged in "delivery sales." That determination was arbitrary and capricious and without any basis in law.

128.    The PACT Act regulates delivery sales by delivery sellers. 15 U.S.C. § 376a.

129.    The PACT Act defines "delivery sale" as, among other things, "any sale of cigarettes or smokeless tobacco *to a consumer*." 15 U.S.C. § 375(5) (emphasis added).

26

130.    The PACT Act defines "consumer" as "any person that purchases cigarettes or smokeless tobacco" *who does not also* lawfully operate as a "manufacturer, distributor, wholesaler or retailer of cigarettes or smokeless tobacco." 15 U.S.C. § 375(4).

131.    Woodlands and HCID only sell goods to tribal customers on tribal reservations in Indian country.

132.    HCID does not sell any cigarettes or smokeless tobacco to anyone who is not lawfully operating as a manufacturer, distributor, wholesaler or retailer of cigarettes or smokeless tobacco under the law of the tribal jurisdiction in which they are located in Wisconsin.

133.    HCID and Woodlands do not sell any cigarettes or smokeless tobacco to anyone anywhere who is not lawfully operating as a manufacturer, distributor, wholesaler or retailer of cigarettes or smokeless tobacco under the laws of a tribal jurisdiction in which they are located.

134.    HCI does not sell or ship any cigarettes or smokeless tobacco.

135.    The PACT Act expressly affirms that nothing within it may be construed to amend, modify, or otherwise affect any limitations on "any limitations under Federal or State law, including Federal common law and treaties, on State, local and tribal tax and regulatory authority with respect to the sale, use, or distribution of cigarettes and smokeless tobacco by or to Indian tribes, tribal members, *tribal enterprises*, or in Indian country." Pub. L. 111-154, Sec. § 5(a)(3);  15 U.S.C. § 375 Note.

136.    The PACT Act expressly affirms that nothing within it may be construed to amend, modify, or otherwise affect "any Federal law, including Federal common law and treaties, regarding State jurisdiction, *or lack thereof*, over any tribe, tribal members, *tribal enterprises*, tribal reservations, or other lands held by the United States in trust for one or more

Indian tribes; under Federal or State law, including Federal common law and treaties, or more Indian tribes." Pub. L. 111-154, Sec. § 5(a)(4) (emphasis added);  *see* 15 U.S.C. § 375 Note.

137.    The PACT Act expressly affirms that nothing within it may be construed to amend, modify, or otherwise affect "any State or local government authority to bring enforcement actions against persons located in Indian Country." Pub. L. 111-154, Sec. § 5(a)(5); 15 U.S.C. § 375 Note.

138.    The PACT Act refers to "tribe," "tribes," "tribal," "Indian" or "Indians" 96 separate times. It is clear Congress intended "lawfully operating" to be determined by reference to *Tribal* as well as state law.

139.    Defendants' determination that Plaintiffs are "delivery sellers" engaged in "delivery sales" under the PACT Act are arbitrary and capricious and without any basis in the plain language of the Act.

140.    Defendants' actions complained of herein are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

141.    Such actions also are in excess of statutory jurisdiction, authority or limitations, or short of statutory right.

### **THIRD CAUSE OF ACTION**

**Violation of Administrative Procedure Act**
**(Wrongful Application of MSA on Tribes)**

142.    Plaintiffs incorporate by reference and re-alleges the allegations contained in Paragraphs 1 through 141 of this Complaint.

143.    The PACT Act Section 5 specifically sets forth that the PACT Act does not increase or otherwise affect state jurisdiction over any "tribe, tribal members, tribal enterprise,

tribal reservation, or other lands held by the United States in trust for one or more Indian tribes "
Pub. L. 111-154, § 5; *see* 15 U.S.C. §375 Note.

144.    To the extent Defendants placed Plaintiffs on the Non-Compliant List because of
alleged violations of the *regulatory* provisions of Wisconsin's MSA laws, Defendants have
impermissibly expanded the State's regulatory authority over tribes and tribal commerce into
Indian country. That is beyond the powers given to the ATF by Congress under the PACT Act. It
violates the Indian Commerce Clause and improperly alters the constitutional balance of federal,
state and tribal powers in this country. Defendants should not be allowed to use the PACT Act as
a means for expanding state regulatory jurisdiction into Indian country or for applying the terms
of the Master Settlement Agreement against tribes.

145.    Defendants' actions complained of herein are arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with law.

146.    Such actions also are in excess of statutory jurisdiction, authority or limitations, or
short of statutory right.

## FOURTH CAUSE OF ACTION

### (Violation of Existing Injunction)

147.    Plaintiffs incorporate by reference and re-alleges the allegations contained in
Paragraphs 1 through 146 of this Complaint.

148.    In the Wisconsin and Idaho Notices received by the Plaintiffs on July 25th and
August 14th respectively, the ATF deemed HCI in violation of 15 U.S.C. §376a (3)(A)-(B).

149.    On information and belief, such deemed violations were a cause for placement by
Defendants of the Plaintiffs on the Non-Compliant List.

150.    A preliminary injunction enjoining Defendants' from enforcing 15 U.S.C. §376a

(3)(A)-(B) was affirmed by the Court of Appeals for the District of Columbia Circuit in *Gordon*

*v. Holder*, 721 F3d 638 (June 28, 2013) (D.C.Cir). Upon information and belief, that injunction

remains in place to this day.

151.    Defendants are prohibited from enforcing the tax provisions of the PACT Act and

from relying on purported violations thereof to place Plaintiffs on the Non-Compliant List and to

inform third-party carriers that carrying Plaintiffs' goods in commerce may violate federal law.

By doing so, Defendants have violated Plaintiffs rights and caused them injury.

## FIFTH CAUSE OF ACTION

### (Violation of the Indian Reorganization Act,
### 25 U.S.C. § 476(f)-(g))

152.    Plaintiffs incorporate by reference and re-alleges the allegations contained in

Paragraphs 1 through 151 of this Complaint.

153.    Defendants' FAQs and other guidance for implementing the PACT Act expressly

seek to apply the separate and distinct laws of the states to individual tribes engaged in lawful

intertribal commerce within Indian country.

154.    Defendants' placed Plaintiffs on the Non-Compliant List based on acts that

allegedly violate Wisconsin state regulatory law.

155.    Upon information and belief, Defendants take the position that the PACT Act's

restrictions on shipments by non-compliant delivery sellers applies to all shipments of cigarettes

and smokeless tobacco regardless what state it is intended for. In other words, Defendants take

the position that a violation of the PACT Act for unlawful acts in one state means that delivery

seller is barred thereafter from shipping its cigarettes or smokeless tobacco into *any* state, regardless whether the delivery seller is in compliance their laws.

156.    Defendants' interpretation of the PACT Act and its application by Defendants against Plaintiffs have conditioned Plaintiffs' federal rights as tribal entities upon the laws of the State of Wisconsin.

157.    Defendants' Final Determination expressly applied Wisconsin state law to determine rights available under federal law to political and economic instrumentalities of the Winnebago Tribe.

158.    The State of Wisconsin lacks regulatory or legislative jurisdiction over Plaintiffs or the Winnebago Tribe.

159.    Defendants' actions have violated the privileges and immunities available to the Plaintiffs as political and economic instrumentalities of the Winnebago Tribe, thereby causing them injury.

160.    Defendants' actions constitute administrative decisions or determinations of a department or agency of the United States that have impermissibly classified, enhanced, or diminished the privileges and immunities available to the Winnebago Tribe of Nebraska and its instrumentalities relative to the privileges and immunities available to other federally recognized tribes by virtue of their status as Indian tribes, thereby causing the Winnebago Tribe injury.

**SIXTH CAUSE OF ACTION**

**(Procedural Due Process)**

161.    Plaintiffs incorporate by reference and re-alleges the allegations contained in Paragraphs 1 through 160 of this Complaint.

162.    As political and economic instrumentalities of a federally recognized Indian tribe, Plaintiffs have a right to engage in Indian commerce with tribal entities and instrumentalities.

163.    Defendants' placement of the Plaintiffs on the Non-Compliant List has had a direct and immediate impact on the Plaintiffs' respective businesses, including those unrelated to marketing cigarettes and smokeless tobacco.

164.    States have traditionally and without exception been zealous advocates of states' rights within the federal system, often and generally at the expense of the mutually exclusive rights of recognized tribes within their boundaries.

165.    Procedural safeguards are essential to ensure that Defendants' enforcement of the PACT Act does not impermissibly tip the balance of powers within the federal structure in favor of states to the diminishment of those of tribes.

166.    Defendants' actions in issuing the Wisconsin Notice and the Final Determination denied the Plaintiffs' rights to a fair hearing to resolve issues of material fact prior to depriving the Plaintiffs of a substantial property interest.

167.    Notwithstanding any challenge received from a delivery seller, the PACT Act gives the Attorney General the authority to unilaterally place a *compliant* delivery seller on the Non-Compliant List and keep them there for up to *two weeks* before the Attorney General must provide a response to the delivery seller's challenge. *See* 15 U.S.C. § 376a(e)(1)(E)(ii), (iv).

168.    Defendants' gave the Plaintiffs' inadequate notice of the charges against them and the substantive nature of Wisconsin's claims. They first asserted that registering and reporting future sales with the State would result in not being placed on the Non-Compliant List.  Later, after the Plaintiffs registered and reported with the State, they stated that, contrary to the PACT Act and their earlier assertion, the Plaintiffs must fully comply with all state tobacco regulations.

169.    Defendants impermissibly placed the burden of proof upon the Plaintiffs to affirmatively demonstrate that their commercial activities were not unlawful.

170.    Upon information and belief, Defendants relied only on evidence submitted by Wisconsin in reaching its decision to place the Plaintiffs on the Non-Compliant List, evidence which Defendants never provided to the Plaintiffs. In doing so, Defendants denied the Plaintiffs' rights to challenge evidence and cross-examine witnesses presented by the State of Wisconsin or any other witness against the Plaintiffs.

171.    Defendants failed to provide the Plaintiffs with a record of any evidence to support Wisconsin's allegations against the Plaintiffs.

172.    Defendants' actions have deprived the Plaintiffs of property interests without due process of law.

## SEVENTH CAUSE OF ACTION

### (Substantive Due Process)

173.    Plaintiffs incorporate by reference and re-alleges the allegations contained in Paragraphs 1 through 172 of this Complaint.

174.    Plaintiffs have a fundamental right to engage in commercial activities with other tribal entities and instrumentalities under the Indian commerce clause of the Constitution.

175.    Defendants placed Plaintiffs on the Non-Compliant List for alleged violations of Wisconsin state law. Defendants have communicated the List to third parties, including Plaintiffs' shippers.

176.    Plaintiffs fear that as of September 26, 2013, Plaintiffs' shippers will refuse to carry Woodlands and HCID's tobacco products for fear of prosecution by Defendants under the PACT Act.

177.    As a result of Defendants wrongful acts, Plaintiffs face the imminent collapse of its national Native tobacco distribution business and the permanent loss of their hard-won business reputations, in violation of their substantive due process rights

## EIGHTH CAUSE OF ACTION

### (Void for Vagueness)

178.    Plaintiffs incorporate by reference and re-alleges the allegations contained in Paragraphs 1 through 177 of this Complaint.

179.    The PACT Act requires compliance with a plethora of state, tribal and local laws relating to the taxation and regulation of cigarettes that are incorporated by reference.

180.    But Defendants' implementation of the PACT Act has rendered it unconstitutionally vague.

181.    Defendants have read the PACT Act to make compliance with applicable tribal laws irrelevant for determining when the PACT Act has been violated.

182.    Defendants have asserted that Plaintiffs must comply with *state* laws in Indian country in order to comply with the PACT Act. This is contrary to the clear language of the PACT Act. Because of this conflict, it is impossible for Plaintiffs to know which laws it must look to to govern its actions under the PACT Act, rendering it void for vagueness.

183.    As a direct result this uncertainty, Plaintiffs have been damaged and may face civil and criminal penalties for activities that cannot be determined with certainty in advance.

## NINTH CAUSE OF ACTION

### (Indian Commerce Clause)

184.    Plaintiffs incorporate by reference and re-alleges the allegations contained in Paragraphs 1 through 183 of this Complaint.

185.    Plaintiffs are economic and political instrumentalities of a federally recognized Tribe.

186.    Plaintiffs engage exclusively in commercial activities with tribal members, entities, and instrumentalities in Indian Country throughout the United States.

187.    Plaintiffs' commercial activities within Indian Country is protected by the Indian Commerce clause.

188.    Plaintiffs' commercial activities within Indian Country are under the exclusive and plenary jurisdiction of Congress, to the exclusion of the states.

189.    The Indian Commerce clause prohibits state jurisdiction over Indian commerce in Indian Country absent express Congressional authorization.

190.    The PACT Act does not expressly authorize state regulatory jurisdiction over Indian Country.

191.    To the contrary, the PACT Act expressly preserves the existing balance of jurisdiction powers within our federal system of government. 15 U.S.C. § 375 Note.

192.    Defendants have improperly imposed Wisconsin state regulatory authority upon Plaintiffs in Indian Country, state regulatory authority that Congress has not authorized and that would not otherwise be applicable in Indian Country.

193.    Plaintiffs have been harmed by Defendants' violations of Plaintiffs inherent sovereign rights under the Indian Commerce Clause.

## **TENTH CAUSE OF ACTION**

### **(CCTA)**

194.    Plaintiffs incorporate by reference and re-alleges the allegations contained in Paragraphs 1 through 193 of this Complaint.

195.    Defendants decision to place Plaintiffs on the Non-Compliant List was predicated in part on a purported violation of the CCTA for having shipped more than 10,000 unstamped cigarettes into Wisconsin. Ex. J.

196.    The CCTA defines "contraband cigarettes" as meaning a quantity in excess of 10,000 cigarettes contraband cigarettes, which bear no evidence of the payment of applicable State *or* local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes…" 18 U.S.C. § 2341(2) (emphasis added).

197.    All tobacco products shipped by HCID to its customers in Indian country in Wisconsin have tribal tax stamps affixed in accordance with the applicable tribal laws of the locality in which its tribal customers reside and received shipment.

198.    All tobacco products shipped by Woodlands to its customers in Indian country have tribal tax stamps affixed in accordance with the applicable tribal laws of the locality in which its tribal customers reside and received shipment.

199.    Plaintiff HCI does not engage in the manufacture, sale, or distribution of any tobacco goods.

200.    Defendants' actions in placing Plaintiffs on the Non-Compliant List for violating the CCTA are clearly in violation of law and have resulted in irreparable harm to Plaintiffs' good reputation and its business relations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that judgment be entered in their favor and against Defendants as follow:

1. Issue an order enjoining the Defendants from enforcing the Final Determination and compelling Defendants to remove Plaintiffs from the Non-Compliant List;

2. Declare that Defendants' placement of Plaintiffs' names on the Non-Compliant List was wrongful under the PACT Act and arbitrary and capricious and a violation of the APA;

3. Declare that the PACT Act's definition of "interstate commerce" excludes commerce that takes place exclusively between tribes in Indian country;

4. Declare that the PACT Act does not make a state's regulatory laws applicable within Indian country in the state;

5. Declare that with respect to Indian country, the definition of "consumer" contained in 15 U.S.C. § 375(4) does not include any person whose activities as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco are in compliance with applicable tribal laws;

6. Declare that cigarettes manufactured and sold by tribal persons lawfully operating under tribal law in Indian country to tribal customers also lawfully operating under tribal in Indian country are not "contraband" for purposes of the CCTA and are not subject to regulation under the PACT Act;

7. Declare that ATF's Final Determination violated Plaintiffs substantive and procedural due process rights;

8. Declare that Defendants' interpretation and implementation of the PACT Act violates those privileges and immunities guaranteed to tribes by Congress in the Indian Reorganization Act;

9.  Award costs, fees and expenses, and reasonable attorneys' fees and expenses, to Plaintiff pursuant to and in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412; and

10. Grant such other further relief as this honorable Court may deem just and proper.

Respectfully submitted this 19th day of September, 2013,

/s/ Matthew J. Kelly_____
DC Bar No. 502726
Ben Fenner (DC Bar No. 1011266)
FREDERICKS PEEBLES & MORGAN LLP
401 9th ST. NW, Suite 700
Washington, D.C.  20004
Telephone: (202) 450-4887
Fax: (202) 450-5106
Email: mkelly@ndnlaw.com
Email: bfenner@ndnlaw.com

John Nyhan (DC Bar No. 467082)
FREDERICKS PEEBLES & MORGAN LLP
2020 L Street, Suite 250
Sacramento, California 95811
Telephone: (916) 441-2700
Fax: (916) 441-2067
Email: jnyhan@ndnlaw.com

*Attorneys for Plaintiffs*